Dr. Leslie Wyatt, President Arkansas State University P.O. Box 10 State University, AR 72467-0010
Dear Dr. Wyatt:
You have presented the following question for my opinion:
 Can interest income earned on funds received from the sale of property by a university be used for operating expenses of the university?
You explain that certain property was donated to Arkansas State University. The property was sold and the proceeds from the sale were placed in an endowment. This investment has generated income that the university seeks to utilize for the university's operating expenses. You state that this use of the funds will not invade the corpus of the endowment or violate the terms of the endowment agreement.
RESPONSE
It is my opinion that the answer to your question will depend upon the terms of the endowment agreement. If the purposes of the endowment are stated broadly enough to encompass the general operations of the university, the interest generated by the endowment funds can be used for the operating expenses of the university. However, if the purposes of the endowment are not so stated, the funds cannot be used for the university's operating expenses.
As you note, the provisions of A.C.A. § 6-62-613 are pertinent to this question. I will address the applicability of that statute. However, because it is my opinion that a more recent and more specific law, the Uniform Management of Institutional Funds Act (A.C.A. § 28-69-601 etseq.) may, under some circumstances, supersede the prohibition stated in A.C.A. § 6-62-613, I will address the more recent and more specific law first.
The Uniform Management of Institutional Funds Act (codified at A.C.A. §28-69-601 et seq.) provides greater investment and expenditure options for certain funds. Among the funds governed by this Act are "institutional funds" ("a fund held by an institution for its exclusive use, benefit, or purposes," A.C.A. § 28-69-602(2)) and "endowment funds" ("an institutional fund, or any part thereof, not wholly expendable by the institution on a current basis under the terms of the applicable gift instrument," A.C.A. § 28-69-602(3)). The term "institution," as used in this Act, includes public institutions of higher education. A.C.A. § 28-69-602(1). The Act clearly can be applicable to the fund that you have described.
Section 603 of the Act states:
 The governing board may appropriate for expenditure for the uses and purposes for which an endowment fund is established so much of the net appreciation, realized and unrealized, in the fair value of the assets of an endowment fund over the historic dollar value of the fund as is prudent under the standard established by § 28-69-607. This section does not limit the authority of the governing board to expend funds as permitted under other law, the terms of the applicable gift instrument, or the charter of the institution.
A.C.A. § 28-69-603 (emphasis added).
This provision permits expenditures of interest income if such expenditures are made "for the uses and purposes" for which the fund was established. Accordingly, this provision will apply to permit the expenditure you seek only if the endowment agreement in question states its purpose broadly enough to include the general operations of the university. I note that I have not been provided with a copy of the endowment agreement and am not in a position to opine as to whether its stated purpose is broad enough to permit expenditures for the general operating expenses of the university.
It is my opinion that to the limited extent that the endowment agreement permits the expenditures of interest earned on endowment and institutional funds, it supersedes the prohibition stated in A.C.A. § 6-62-613.
That statute states:
 (a) All moneys received by a board as consideration for the transfer of property, whether in the form of payment of the principal of or interest on the purchase price for property sold, rent for property leased or in any other form, and all investment earnings thereon, are specifically declared to be bank funds.
 (b) Such moneys shall not be deposited in the State Treasury but shall be deposited in accounts of the board in one (1) or more banks selected by the board.
 (c)(1) Such moneys may be used for any lawful purpose specified by the board without the necessity of legislative authorization or voucher examination and approval under §§ 19-4-801—19-4-806.
 (2) However, no part of the moneys shall ever be used to pay current operating expenses of the university other than in connection with the property for which such moneys were received.
 (d) The board may invest and reinvest all or part of such moneys. Such investments and expenditures shall be subject to audit as provided by law.
A.C.A. § 6-62-613 (emphasis added).
The expenditure prohibition stated in Section 613(c)(2), above, directly conflicts with the expenditure authority granted in Section 603 of the Uniform Management of Institutional Funds Act. I base my conclusion that the expenditure authority of Section 603 of the Uniform Management of Institutional Funds Act supersedes the expenditure prohibition of Section 613(c)(2) above (in some limited instances) on two well-established rules of statutory construction. The first holds that if two acts that address the same subject are in conflict, the one that is passed later in time will govern. See Uilkie v. State, 309 Ark. 48, 827 S.W.2d 131 (1992);Daniels, Director v. City of Fort Smith, 268 Ark. 157, 594 S.W.2d 238
(1980). The second holds that where two acts address the same subject, and one is more specific than the other, the more specific should govern. See Raley v. Wagner, 346 Ark. 234, 57 S.W.3d 683 (2001); OzarkGas Pipeline v. Public Ser. Comm., 342 Ark. 591, 29 S.W.3d 730 (2000). The Uniform Management of Institutional Funds Act (1992) was passed later in time than A.C.A. § 6-62-613 (1983). Moreover, the Uniform Management of Institutional Funds Act is more specific than A.C.A. § 6-62-613, in that it specifically governs endowment funds, whereas A.C.A. § 6-62-613
applies more broadly to any fund received as consideration for a transfer of property, whether in the form of an endowment or not. Accordingly, I conclude that the expenditure authority granted in Section 603 of the Uniform Management of Institutional Funds Act supersedes the expenditure prohibition stated in A.C.A. § 6-62-613 in the limited instances in which expenditures of endowment interest income fall within the stated purpose of the endowment, as provided in Section 603 of the Act.
I emphasize that any supersession of A.C.A. § 6-62-613 by the Uniform Management of Institutional Funds Act is limited and will not apply in every case. It will not apply to permit expenditures that are not within the stated purpose of an endowment, as required by Section 603 of the Act. Thus, if the purpose of the endowment that you have described is not stated broadly enough in the endowment agreement to permit expenditures for the general operating expenses of the university, it is my opinion that such expenditures are explicitly prohibited by the provisions of A.C.A. § 6-62-613.
The funds that you have described clearly fall within the provisions of A.C.A. § 6-62-613, since they were received by the university as consideration for a transfer of property. As you note, Section (c)(2) of the statute permits the use of such funds for operating expenses only if such expenses are in connection with the property for which the funds were received. You argue that because the university has sold the property for which the funds in question were received, it is nonsensical to limit the use of the interest income from those funds to operating expenses in connection with that property.
It is my opinion that the statute unambiguously prohibits the type of expenditure that you have proposed (in instances not governed by the Uniform Management of Institutional Funds Act). This conclusion is not "nonsensical," inasmuch as the statute applies not only to funds received from property that universities sell, but also to funds received as consideration for property that universities continue to own, such as leased or rented property. Universities clearly may have ongoing operating expenses in connection with such property. The legislature's obvious intent was to permit the use of the funds in question for operating expenses related to property that the university continues to own, but to prohibit their use for general operating expenses. To adopt the reading of the statute that you have proposed would render meaningless the statute's explicit prohibition of the use of these funds for operating expenses. The Arkansas Supreme Court has consistently rejected statutory interpretations that render the language of statutes meaningless. See, e.g., ATT v. Public Serv. Comm'n., 344 Ark. 188,40 S.W.3d 273 (2001); Burford Distributing, Inc. v. Starr, 341 Ark. 914,20 S.W.3d 363 (2000); Yarbrough v. Witty, 336 Ark. 479, 987 S.W.2d 257
(1999); Lawhon Farm Servs. v. Brown, 335 Ark. 272, 984 S.W.2d 1 (1998);Stapleton v. M.D. Limbaugh Constr. Co., 333 Ark. 381, 969 S.W.2d 648
(1998); Citizens to Establish a Reform Party v. Priest, 325 Ark. 257,926 S.W.2d 432 (1996); Henson v. Fleet Mtg. Co., 319 Ark. 491,892 S.W.2d 250 (1995). Thus, such expenditures are impermissible in the absence of a broadly stated endowment purpose.
To summarize, then, I have concluded that an expenditure of the interest income earned on an endowment created from the proceeds of a sale of property donated to the university can be used for the general operating expenses of the university if the purpose of the endowment as stated in the endowment agreement is worded broadly enough to encompass such general expenditures, as required by A.C.A. § 28-69-603. If, on the other hand, the purpose of the endowment is not stated broadly enough to permit expenditures for general operating expenses, the expenditures are expressly prohibited by the provisions of A.C.A. § 6-62-613(c)(2).
Assistant Attorney General Suzanne Antley prepared the foregoing opinion, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:SA/cyh